```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------X

SMART STUDY CO., LTD.,

                Plaintiff,

        - against -

ABABYKING STORE, AMZPTBOY, BOMCAN,
CLARE-TECH-ONLINE, CRAFPLAY, CUTE
CHERRY, DISPLAY IT, DONGXIAO,
DOTLITE, ECSTATICPARTY, ELSANIKO,
FRUITFUL PARTY, GLIGLITTR, GLORY                    ORDER
PARTERNER, HABBIPET, JENNIFER PER,
JIAZSTYLED, JIEJIN, JINBAORUI, JU               21 Civ. 1783 (NRB)
XI, KANGGY, KIDSINWE, KISS MONKEY,
KOBIT DIRECT,
KUANCHENGQUXINFAFAXIANSHENGXIAN,
LEJIAWANG, LIANQIANMAOYIY, LYNHEVA,
PAKBOOM, PARTY WELL, PEACOCKUI,
QIYNAO, RONGFUCHANG, SENWAN GIFT
STORE, SHAMI, SIENON, SQZKZC,
STARINGIRL, SUMMERDAYS, TIME-KILLER,
TOYS POUCH, WEI MI, WHHOKNB,
XIANHEYUANXINGONGMAOYOUXIANGONGSI-
25, XINGRONGSHENG, YAMATCH DIRECT,
YAWDYA,
YONGCHUNCHENGQINGMAOYIYOUXIANGONGSI,
YUJIAXINGGONGSI, YUYOUJIA, ZHAO2888,
ZHONGZHUANG and ZITADA,

                Defendants.
----------------------------------X
```

**WHEREAS**, on March 2, 2021, plaintiff Smart Study Co., Ltd. ("plaintiff") filed a complaint against various online merchants located in China, which are conducting business in the United States via their e-commerce storefronts on Amazon.com, including Clare-Tech-Online, Crafplay, Display it, DONGXIAO,

EcstaticParty, Elsaniko, Glory Parterner, Habbipet, JINBAORUI, KANGGY, Kobit Direct, kuanchengquxinfafaxianshengxian, Lejiawang, lianqianmaoyiy, party well, QIYNAO, rongfuchang, ShaMi, Summerdays, Time-killer, TOYS POUCH, WHHOKNB, XiAnHeYuanXinGongMaoYouXianGongSi-25, xingrongsheng, Yamatch Direct, YAWDYA, yujiaxinggongsi, yuyoujia, ZHAO2888 and Zitada (the "defaulting defendants"), for trademark counterfeiting; trademark infringement; false designation of origin, passing off, and unfair competition; copyright infringement; and New York unfair competition, arising from their infringement of plaintiff's Baby Shark Marks[1] and Baby Shark Works[2] (the "action") (ECF No. 7 ¶¶ 1, 6, 30, 49-95);

---

[1] "Baby Shark Marks" shall be defined as the marks covered by the Baby Shark Registrations (U.S. Trademark Registration Nos.: 5,803,108 for "BABY SHARK" for a variety of goods in Class 28; 5,483,744 for "PINKFONG" for a variety of goods in Classes 3 and 21; 5,327,527 for "PINKFONG" for a variety of goods in Classes 9, 16 and 28; 4,993,122 for "PINKFONG" a variety of goods in Classes 9 and 25; 6,138,374 for "pinkfong" for a variety of goods in Class 41; and 6,021,523 for "pinkfong Baby Shark" for a variety of goods in Class 28) and the Baby Shark Applications (U.S. Trademark Serial Application Nos.: 79/253,035 for registration of "BABY SHARK" for a variety of goods in Classes 41, 25, 16 and 9; 79/249,403 for registration of "PINKFONG BABY SHARK" for a variety of goods in Classes 24 and 21; 88/396,786 for registration of "PINKFONG BABY SHARK" for a variety of goods in Class 25; 88/529,984 for registration of "PINKFONG" for a variety of goods in Class 2, 3, 9, 14, 16, 18, 20, 21, 24, 25, 26, 27, 28, 29, 30, 32, 41; 88/530,086 for registration of "BABY SHARK" for a variety of goods in Class 2, 3, 9, 14, 16, 18, 20, 21, 24, 25, 26, 27, 28, 29, 30, 32, 41; 88/594,141 for "PINKFONG" for a variety of goods in Class 5; and 88/594,122 for "BABY SHARK" for a variety of goods in Class 5).

[2] "Baby Shark Works" shall be defined as U.S. Copyright Registration Nos.: VA 2-130-856, covering Baby Shark; VA 2-130-847, covering Daddy Shark; VA 2-130-854, covering Mommy Shark; VA 2- 131-983, covering Pink Fong Mascot; SR 823-609, covering Baby Shark (Sound Recording and Music); and PA 2-142-905, covering Baby Shark (Motion Picture).

2

**WHEREAS**, on March 2, 2021, plaintiff filed an ex parte application for an order authorizing bifurcated and alternative service by email pursuant to Federal Rule of Civil Procedure 4(f)(3) ("March 2, 2021 application") (ECF Nos. 13-16);

**WHEREAS**, in support of its March 2, 2021 application, plaintiff asserted that "[a]lthough China is a signatory to [the Hague Convention], the [Hague] Convention 'shall not apply where the address of the person to be served with the document is not known'" and "there are, in fact, only partial, incomplete or no physical addresses whatsoever associated with the majority of Defendants' User Accounts[3]" (ECF No. 15 at 21, 22 n. 15 (citing Hague Convention, November 15, 1965, Article 1));

**WHEREAS**, on March 3, 2021, the Court granted plaintiff's March 2, 2021 application, finding that "[s]ervice on [the defaulting defendants] via electronic means is reasonably calculated to result in proper notice to [the defaulting defendants]" and that sufficient cause exists to authorize and deem effective alternative service by email (ECF No. 4 ¶¶ 17, IV);

**WHEREAS**, on March 15, 2021, plaintiff served the defaulting defendants by email (ECF Nos. 17, 18);

---

[3] "User Accounts" shall be defined as any and all websites and any and all accounts with online marketplace platforms such as Alibaba and AliExpress, as well as any and all as yet undiscovered accounts with additional online marketplace platforms held by or associated with the defaulting defendants, their respective officers, employees, agents, servants and all persons in active concert or participation with any of them.

**WHEREAS** the defaulting defendants did not answer the complaint;

**WHEREAS**, on September 8, 2022, plaintiff filed a proposed certificate of default as to the defaulting defendants (ECF Nos. 55-56);

**WHEREAS**, on September 9, 2022, the Clerk of Court issued a certificate of default as to the defaulting defendants (ECF No. 57);

**WHEREAS**, on September 9, 2022, plaintiff moved for default judgment as to the defaulting defendants (ECF Nos. 58-61);

**WHEREAS**, following a request from the Court, on December 13, 2022, plaintiff filed a supplemental memorandum of law and declaration in support of its motion for default judgment to address the issue of whether plaintiff exercised reasonable diligence in attempting to discover the defaulting defendants' physical addresses for service of process, in light of Judge Gregory Woods' recent decision in Smart Study Co. v. Acuteye-Us, No. 21 Civ. 5860 (GHW), 2022 WL 2872297 (S.D.N.Y. July 21, 2022), holding that email service on Chinese defendants is prohibited by the Hague Convention, but recognizing that the Hague Convention does not apply when a plaintiff could not identify a Chinese defendant's physical address after exercising reasonable diligence, id. at 5, 7; see also Cengage Learning, Inc. v. Xuhong Wang, No. 17 Civ. 4914 (JFK), 2017 WL 11570668,

at *2 (S.D.N.Y. Sept. 14, 2017) ("[S]ervice of process by email on Defendants in China is not prohibited by the Hague Convention, to which China is a signatory, because the Hague Convention does not apply where the address of the person to be served is not known to the party serving process.");

**WHEREAS**, in its supplemental declaration, plaintiff declared that it attempted to identify the defaulting defendants' physical addresses by seeking expedited discovery from the defaulting defendants, Financial Institutions[4], and Third Party Service Providers[5], including Amazon, which failed to provide the requested physical addresses, and by utilizing attorneys at Epstein Drangel's Beijing office, who conducted further research using a Chinese search engine, a Chinese company registration website, and the National Enterprise Credit Information Publicity System, but was nevertheless unable to do

---

[4] "Financial Institutions" shall be defined as any banks, financial institutions, credit card companies and payment processing agencies, such as Amazon.com, Inc., Amazon Payments, Inc. ("Amazon Pay"), PayPal Inc. ("PayPal"), Payoneer Inc. ("Payoneer"), PingPong Global Solutions, Inc. ("PingPong") and other companies or agencies that engage in the processing or transfer of money and/or real or personal property of the defaulting defendants.

[5] "Third Party Service Providers" shall be defined as online marketplace platforms, including, without limitation, those owned and operated, directly or indirectly, by Amazon, such as Amazon.com, as well as any and all as yet undiscovered online marketplace platforms and/or entities through which the defaulting defendants, their respective officers, employees, agents, servants and all persons in active concert or participation with any of them manufacture, import, export, advertise, market, promote, distribute, offer for sale, sell and/or otherwise deal in Counterfeit Products which are hereinafter identified as a result of any order entered in this action, or otherwise.

so, given all but three of the defaulting defendants used "unidentifiable seller names, which are not associated with any bona fide business entities," and, of the three defaulting defendants with names of bona fide corporate entities, each entity was registered to more than one company, none of which could be connected to the defaulting defendants (ECF Nos. 64 ¶¶ 16-18, 65 ¶¶ 3-17);"

**WHEREAS** "[t]he decision of whether to order service of process under Rule 4(f)(3) is 'committed to the sound discretion of the district court.'" IN RE: ONE APUS CONTAINER SHIP INCIDENT ON NOVEMBER 30, 2022, No. 22 MD. 3028 (PAE), 2022 WL 17370122, at *1 (S.D.N.Y. Dec. 2, 2022) (internal citations and quotations omitted); see also In re S. African Apartheid Litig., 643 F.Supp.2d 423, 433 (S.D.N.Y. 2009) ("A court is afforded wide discretion in ordering service of process under Rule 4(f)(3)."); SEC v. Anticevic, No. 5 Civ. 6991 (KMW), 2009 WL 361739, at *3 (S.D.N.Y. Feb. 13, 2009) ("The Rule provides the Court with flexibility and discretion empowering courts to fit the manner of service utilized to the facts and circumstances of the particular case." (internal citations and quotations omitted));

**WHEREAS** the Court is satisfied that plaintiff was not able to identify the defaulting defendants' physical addresses after exercising reasonable diligence, see e.g., ECF No. 65-1 (oral ruling in FoxMind Canada Enterprises Ltd. v. Abctec, et al., 21

Civ. 5146 (KPF) (S.D.N.Y. July 14, 2022) (approving similar measures)); Zuru (Singapore) Pte., Ltd. v. Individuals Identified on Schedule A Hereto, No. 22 Civ. 2483 (LGS), 2022 WL 14872617, at *2 (S.D.N.Y. Oct. 26, 2022) (same); Advanced Access Content Sys. Licensing Adm'r, LLC v. Shen, No. 14 Civ. 1112 (VSB), 2018 WL 4757939, at *4-5 (S.D.N.Y. Sept. 30, 2018) (same);

**WHEREAS** the Court is further satisfied that email service was reasonably calculated to provide notice consistent with due process, see e.g., Zuru (Singapore) Pte., Ltd., 2022 WL 14872617, at *2; Mattel, Inc. v. Animefun Store, No. 18 Civ. 8824 (LAP), 2020 WL 2097624, at *4-5 (S.D.N.Y. May 1, 2020); it is hereby

**ORDERED** that judgment is granted in favor of plaintiff on all claims properly pled against the defaulting defendants in the complaint; it is further

**ORDERED** that plaintiff is awarded Seventy-Five Thousand Dollars ($75,000.00) in statutory damages against each defaulting defendant pursuant to Section 15 U.S.C. § 1117(c) of the Lanham Act and/or 17 U.S.C. § 504(c) of the Copyright Act, as well as post-judgment interest at the statutory rate set forth in 28 U.S.C. § 1961(a); it is further

**ORDERED** that the defaulting defendants and their respective officers, agents, servants, employees, and all persons acting in

concert with or under the direction of the defaulting defendants (regardless of whether located in the United States or abroad), who receive actual notice of this Order are permanently enjoined and restrained from: (a) manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale, selling and/or otherwise dealing in Counterfeit Products[6] or any other products bearing the Baby Shark Marks and/or Baby Shark Works and/or marks and/or artwork that are confusingly or substantially similar to, identical to and constitute a counterfeiting and/or infringement of the Baby Shark Marks and/or Baby Shark Works; (b) directly or indirectly infringing in any manner plaintiff's Baby Shark Marks and/or Baby Shark Works; (c) using any reproduction, counterfeit, copy or colorable imitation of plaintiff's Baby Shark Marks and/or Baby Shark Works to identify any goods or services not authorized by plaintiff; (d) using plaintiff's Baby Shark Marks and/or Baby Shark Works, or any other marks that are confusingly similar or substantially similar to the Baby Shark Marks and/or Baby Shark Works on or in connection with the manufacturing,

---

[6] "Counterfeit Products" shall be defined as products bearing or used in connection with the Baby Shark Marks and/or Baby Shark Works, and/or products in packaging and/or containing labels and/or hang tags bearing the Baby Shark Marks and/or Baby Shark Works, and/or bearing or used in connection with marks and/or artwork that are confusingly or substantially similar to the Baby Shark Marks and/or Baby Shark Works and/or products that are identical or confusingly or substantially similar to the Baby Shark Products, which are part of plaintiff's licensing program for a wide variety of consumer products such as toys, sound books, t-shirts, associated with and/or related to the Baby Shark Content.

importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale, selling and/or otherwise dealing in the Counterfeit Products; (e) secreting, concealing, destroying, altering, selling off, transferring or otherwise disposing of and/or dealing with: (i) Counterfeit Products; (ii) any computer files, data, business records, documents or any other records or evidence relating to the defaulting defendants' User Accounts and/or Merchant Storefronts[7]; the defaulting defendants' Assets; and (iii) the manufacture, importation, exportation, advertising, marketing, promotion, distribution, display, offering for sale and/or sale of Counterfeit Products by defaulting defendants and by their respective officers, employees, agents, servants and all persons in active concert or participation with any of them; and (f) effecting assignments or transfers, forming new entities or associations, or creating and/or utilizing any other platform, User Accounts, Merchant Storefronts or any other means of importation, exportation, advertising, marketing, promotion, distribution, display, offering for sale and/or sale of Counterfeit Products for the purposes of circumventing or

---

[7] "Merchant Storefronts" shall be defined as any and all User Accounts through which the defaulting defendants, their respective officers, employees, agents, servants and all persons in active concert or participation with any of them operate storefronts to manufacture, import, export, advertise, market, promote, distribute, display, offer for sale, sell and/or otherwise deal in Counterfeit Products, which are held by or associated with the defaulting defendants, their respective officers, employees, agents, servants and all persons in active concert or participation with any of them.

9

otherwise avoiding the prohibitions set forth in this Order; it is further

**ORDERED** that the defaulting defendants must deliver up for destruction to plaintiff any and all Counterfeit Products and any and all packaging, labels, tags, advertising and promotional materials and any other materials in the possession, custody or control of the defaulting defendants that infringe any of plaintiff's trademarks, or other rights including, without limitation, the Baby Shark Marks and/or Baby Shark Works and/or artwork that are confusingly or substantially similar to the Baby Shark Marks and/or Baby Shark Works pursuant to 15 U.S.C. § 1118; it is further

**ORDERED** that the Third Party Service Providers and Financial Institutions are permanently enjoined and restrained from: (a) secreting, concealing, destroying, altering, selling off, transferring or otherwise disposing of and/or dealing with any computer files, data, business records, documents or any other records or evidence relating to the defaulting defendants' Assets[8] from or to the defaulting defendants' Financial Accounts[9]; and (b) knowingly instructing, aiding or abetting any

---

[8] "Assets" shall be defined as any and all money, securities or other property or assets of the defaulting defendants (whether said assets are located in the U.S. or abroad).

[9] "Financial Accounts" shall be defined as any and all financial accounts associated with or utilized by any defaulting defendants or any defaulting

10

other person or business entity in engaging in any of the activities referred to above; it is further

**ORDERED** that sufficient cause has been shown, the 30-day automatic stay on enforcing plaintiff's judgment, pursuant to Federal Rule of Civil Procedure 62(a) is hereby dissolved; it is further

**ORDERED** that the defaulting defendants may, upon proper showing and two (2) business days written notice to the Court and plaintiff's counsel, appear and move for dissolution or modification of the provisions of this Order concerning the restriction or restraint of the defaulting defendants' frozen assets, additional assets, or additional financial accounts; it is further

**ORDERED** that any failure by the defaulting defendants to comply with the terms of this Order shall be deemed contempt of Court, subjecting the defaulting defendants to contempt remedies to be determined by the Court, including fines and seizure of property; it is further

**ORDERED** that the Court releases the Ten Thousand U.S. Dollar ($10,000.00) security bond that plaintiff submitted in connection with this action to counsel for plaintiff, Epstein

---

defendants' User Accounts or Merchant Storefront(s) (whether said account is located in the U.S. or abroad).

Drangel, LLP, 60 East 42nd Street, Suite 1250, New York, NY 10165; it is further

**ORDERED** that this Court shall retain jurisdiction over the action and the parties in order to construe and enforce this Order.

Dated:   New York, New York
         December 20, 2022

                                    _____
                                    NAOMI REICE BUCHWALD
                                    UNITED STATES DISTRICT JUDGE